NEWMAN, Circuit Judge,
dissenting.
This case returns to the Federal Circuit on appeal of a district court decision on remand from an en banc decision of this court. The issue is willful infringement and its consequences, which this en banc court remanded for de novo determination as a matter of law, vacating the judgment entered on the jury verdict.
The en banc court changed the standard and procedure for determination of willful infringement and its consequences in order to bring reasonable national uniformity to application of this penalty. The court held that the objective reasonableness of a defense to infringement is a legal question to be determined by the judge, and is decided de novo on appeal. The court held that willful infringement is not a jury question, and vacated the judgment of willful infringement and punitive damages that the district court had entered on the jury verdict.
On remand, the district court re-entered its prior judgment in its entirety, reciting the evidence that in its view supported the judgment. Again here on appeal, my colleagues on this panel repeat the district court’s exercise, do not apply de novo standards of review, and do not apply the clear precedent which requires determination of whether Gore acted with “objective recklessness” In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed.Cir.2007) (en banc). Nor do my colleagues attempt to meet the court’s responsibility to impart reasonable consistency and objective standards to the penalty aspect of “willful” activity, although this was the reason why the en banc court established a system of de novo *849 determination of this question of law applied to the facts of the particular case.
Precedent establishes that the objective prong of willful infringement “tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement.” Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F.3d 1305, 1319-20 (Fed.Cir.2010). When there is a “substantial question of invalidity or unenforceability” of the patent, willful infringement cannot arise, as a matter of law. Seagate, 497 F.3d at 1371. The panel majority does not review the evidence and apply the law objectively; the court merely searches for and recites adverse evidence.
The majority ignores that Gore’s employee Cooper was the first to conceive of the invention — by final ruling of the patent interference tribunal and this court; the majo'rity ignores that the '135 patent was pending for twenty-eight years, while Gore developed this Gore-Tex® prosthetic product; the majority ignores that the district court refused to enjoin Gore’s provision of these prosthetic products after this litigation, citing the “potentially devastating public health consequences”[1]; the court does not mention” the inequitable conduct that pervades Dr. Gold-farb’s actions in obtaining the patent, including confessed perjury of a key witness; the court does not mention the action for misappropriation of Gore’s trade secrets by Gore ex-employees who now testify against Gore; the court does not mention the solid support for the theory that there is at least joint invention.
I start with the history of this conflict, for it is relevant to both willful infringement and the award of punitive damages.
I. The Interference
The saga of Bard versus Gore started forty-one years ago, when Gore’s employee Peter Cooper, manager of the Gore plant in Flagstaff, Arizona, invited Dr. David Goldfarb at the Arizona Heart Institute to participate in an ongoing study of Gore’s product, expanded polytetrafluoroethylene (“ePTFE”), for use as a vascular prosthesis, i.e., as a graft to repair and replace blood vessels.
Gore’s ePTFE polymer, (brand name Gore-Tex®), has unique properties based on its microporous and fibrous structure, as well as the adaptability of that structure to various uses. Gore employees sought to develop new applications for ePTFE, and continued to modify its structure in studying new uses. Beginning around 1970, Peter Cooper led the development of ePT-FE vascular prosthetic grafts.
Cooper and other Gore employees col-' laborated with vascular surgeons in the United States and Japan, who surgically inserted Gore’s ePTFE vascular tubes of varying porous and fibrous structure into the arteries of dogs and sheep. Compatibility of ePTFE with human tissue and its effectiveness as mammalian grafts were demonstrated. In addition to scientific publications and the PTO interference record, details of this history may be found in this court’s opinions in the interference appeals, reported at Cooper v. Goldfarb, 154 F.3d 1321 (Fed.Cir.1998) (“Cooper I”) and Cooper v. Goldfarb, 240 F.3d 1378 (Fed.Cir.2001) (“Cooper II ”).
In 1973 Cooper, along with Gore employee Richard Mendenhall, contacted Dr. Goldfarb, who had recently arrived at the Arizona Heart Institute, and invited him to participate in the ePTFE vascular study. Cooper gave Dr. Goldfarb the reports of *850 surgeons who had previously evaluated ePTFE tubes as vascular grafts, and gave him samples of the most effective ePTFE tubes based on the prior evaluations. A letter from Cooper to Dr. Goldfarb accompanying these samples stated that they “represent the latest attempt to achieve satisfactory patency rates in small artery prosthetics.” Cooper II, 240 F.3d at 1384.
Dr. Goldfarb tested the Gore samples by inserting them in blood vessels of dogs and inspecting their structure by microscope. On October 24, 1974 Dr. Goldfarb filed a patent application on the structure of the most effective of the samples he tested. Cooper had previously filed a patent application covering the same structure, and the PTO declared an interference between the Cooper and Goldfarb applications.
In its interference decision, the PTO held that Cooper was the first to conceive the subject matter of the interference count, ruling that Cooper “had conceived all the limitations of the count” and “had established conception as of June 5, 1973.” Cooper I, 154 F.3d at 1328. However, the PTO also held that Goldfarb was the first to reduce the count to practice, declining to credit Cooper with the prior reductions to practice by the surgeons to whom Cooper had previously provided ePTFE tubes and grafts for testing and evaluation. Although the record contains extensive evidence of these tests, reports, and continued collaboration, the PTO tribunal also did not permit Cooper to show diligence to his filing date, on the ground that diligence had not been pleaded in the interference. Thus the PTO awarded priority to Gold-farb.
On appeal, this court affirmed the PTO ruling that Cooper was the first to conceive the subject matter of the count. This court found error in the PTO’s refusal to consider whether Goldfarb’s work “inured” to Cooper’s benefit. The PTO had stated that the issue of inurement had not been raised at final hearing, but this court found that inurement had been raised “in several places in the final hearing brief,” Cooper 7, 154 F.3d at 1332, and remanded to the PTO to consider inurement. On remand the PTO held that Goldfarb’s work did not inure to Cooper’s benefit, relying on affidavits of a Gore employee, Dan Det-ton, who later admitted to perjury.[2] Cooper II, 240 F.3d at 1380-81.
The PTO awarded the patent to Dr. Goldfarb, and U.S. Patent No. 6,436,135 (“the '135 patent”) issued on August 20, 2002. Meanwhile, during the twenty-eight years of patent pendency, Gore developed ePTFE grafts for a variety of prosthetic uses, and achieved medical and commercial success.
II. The Infringement Litigation
On March 28, 2003, Dr. Goldfarb and exclusive licensee Bard sued Gore for infringement of the '135 patent. Although Gore attempted to raise several defenses of invalidity and enforceability, at trial and by motion, the district court and the jury were told repeatedly that the Federal Circuit had finally adjudged that Dr. Goldfarb was entitled to the patent.
The jury rendered a verdict of willful infringement, and assessed damages measured as Bard’s lost profits on Gore’s products for which Bard had a competing prod *851 uct. The jury also awarded a royalty to Bard at rates ranging from 10% to 18%, for Gore sales of ePTFE products for which there was no competing Bard product. These damages totaled $185,589,871.02. Then, based on the jury’s finding of willful infringement, the district court doubled the damages, and awarded Goldfarb and Bard their attorneys’ fees and costs. Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 586 F.Supp.2d 1083 (D.Ariz.2008) (“Bard I ”). A split panel of the court affirmed. Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 670 F.3d 1171 (Fed.Cir.2012) (“Bard II”). Gore requested rehearing.
III. Rehearing en banc
The Federal Circuit granted rehearing en banc on the issue of willful infringement and the award of punitive damages and attorneys’ fees. The en banc court vacated these district court rulings, stating that “the opinion of the court accompanying the judgment is modified, in accordance with the panel opinion accompanying this order.” Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 476 Fed.Appx. 747, 748 (Fed.Cir.2012) (en banc) (“Bard III”). The court cited the need for consistency and reasonable predictability in resolving the pervasive issue of willful infringement, and ruled that willful infringement is “a question of law based on underlying mixed questions of law and fact and is subject to de novo review,” Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 682 F.3d 1003, 1005 (Fed.Cir.2012) (“Bard IV”).
The court remanded for de novo determination of willful infringement. The court explained that willful infringement contains objective and subjective components, and that the objective component requires proof of objective recklessness in the face of a high likelihood of infringing a patent known to be valid. Bard IV, 682 F.3d at 1006. This objective component receives de novo review, as a matter of law.
The objective prong of willful infringement is not met when there is a reasonable defense to the charge of infringement. Spine Solutions, 620 F.3d at 1320; see also Halo Elecs., Inc. v. Pulse Elecs., Inc., 769 F.3d 1371, 1382 (Fed.Cir.2014); Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d 1365, 1377 (Fed.Cir.2012). Then, if a district court holds the objective defenses to be objectively unreasonable, the jury’s subjective findings can be reviewed. Bard IV, 682 F.3d at 1008.
After clarifying the legal principles, this court remanded to the district court for redetermination of willful infringement. The district court reviewed the issues and reinstated its prior judgment of willful infringement, double damages, and attorneys’ fees. The district court stated that the evidence supported the prior judgment. Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., No. 03-0597, 2013 WL 5670909 (D.Ariz. Oct. 17, 2013) (“Bard V”). Today’s majority now affirms.
IV. This Appeal
The panel majority, while mentioning that willful infringement is now a matter of law, does not undertake the required de novo review. Determination of a matter of law requires consideration of the positions of both sides, with due attention to the burdens and standards of proof. As stated in Seagate Tech., a ruling of willful infringement requires objective recklessness in the face of a high likelihood of infringing a patent known to be valid and enforceable.
*852 The question for the reviewing court is not whether the district court’s decision of law can be found supported by substantial evidence. The question of willful infringement is whether the accused infringer raised a substantial question of invalidity or unenforceability regarding the '135 patent. In re Seagate, 497 F.3d at 1371. Willful infringement cannot lie “when a reasonable defense is raised,” Advanced Fiber, 674 F.3d at 1377, “[although] the record contains substantial evidence to support the jury’s implicit finding” of validity and enforceability. Spine Solutions, 620 F.3d at 1319. The required showing of objective recklessness is not met, as a matter of law, when the patent is reasonably subject to challenge.
It cannot be disputed that Gore raised several substantial questions challenging the validity and enforceability of the '135 patent. I have previously outlined some of the grounds on which the '135 patent was vulnerable:
(1) the ruling of the Patent and Trademark Office, affirmed by the Federal Circuit, that Gore’s employee Cooper was the first to conceive of the invention that was patented by Goldfarb; (2) the fact that Cooper provided Goldfarb with the Gore — Tex® tubes that Goldfarb patented; (3) the fact that Goldfarb tested the tubes in dogs at Cooper’s request; (4) the fact that others had previously tested the Gore — Tex® tubes in dogs and sheep, and had reported and published the same results that Goldfarb later patented; (5) the fact that the Goldfarb application was pending for 28 years, leaving doubt as to the outcome in the Patent Office. It is no.t irrelevant that the eventual allowance of the Gold-farb application included the admitted perjured affidavit of Detton, an affidavit that Detton asked Goldfarb to withdraw, and was refused.
Bard III, 682 F.3d at 1009 (Newman, J., dissenting in part). These are all substantial questions of validity and enforceability of the '135 patent, weighing against reckless disregard.
Gore also presented by motion seven grounds of unenforceability of the '135 patent, quoted by the district court as follows:
1. Plaintiffs and their attorneys failed to advise the Patent Office of Dr. Volder’s connections with Impra in his 1976 affidavit in which he expressed his opinion on the issue of obviousness as a presumably impartial person skilled in the art.
2. Plaintiffs and their attorneys failed to advise the Patent Office at any time prior to withdrawal of the rejection of Claims 1 to 10 of the Goldfarb patent application, that in 1978 Lenox Baker, M.D., withdrew and repudiated paragraph 6 of his 1976 affidavit filed with the Patent Office.
3. The filing of and reliance on two 1976 affidavits from D. Dan Detton, notwithstanding Mr. Detton’s repudiation of those affidavits before they were filed, and Plaintiffs’ subsequent failure to advise the Patent Office of Mr. Detton’s 1978 repudiation of his 1976 affidavits.
4. Plaintiffs’ reliance on an error that the Patent Office made in connection with the Matsumoto publication ifi Surgery, in which the Patent Office Examiner mistakenly interpreted the wall thickness in that publication to be 1 millimeter (“mm”) rather than 0.5 mm.
5. Plaintiffs and their attorneys failed to provide information to the Patent Office about Dr. Volder’s work and his possible role as an inventor or co-inventor, including the failure to disclose the existence of and the subsequent destruction of the Voider notebook.
*853 6. Plaintiffs and their attorneys failed to comply with the Patent Office order requiring production of material information from the Goldfarb v. Impra litigation.
7. Plaintiffs and their attorneys failed to advise the Patent Office Examiner of the existence of the Gore shipping log, which contained information about prior art vascular graft wall thicknesses that was inconsistent with the 1976 affidavits of Harold Green and Mr. Detton, and inconsistent with the argument made by ,Dr. Goldfarb and Mr. Sutton in persuading the Patent Office Examiner to withdraw the November 1975 rejection of Claims 1 to 10.
Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 573 F.Supp.2d 1170, 1173-74 (D.Ariz.2008).
Each asserted ground of inequitable conduct was summarily dismissed by the district court, which stated that, even if Dr. Goldfarb misrepresented or intentionally withheld information from the PTO and despite the admitted perjury, the false information was “not material to the prosecution of the '135 patent.” Id. at 1215. That reasoning cannot be sustained.
In addition, Gore’s argument of incorrect inventorship, or at least joint invention, is quite viable, and raises a substantial question of validity, which requires correct inventorship. Given the PTO’s findings that Cooper was the first to conceive the invention, and this court’s prior affirmance- that Cooper conceived of the invention including the fibril length limitation before Goldfarb evaluated the 2-73 RF graft, see Cooper II, 240 F.3d at 1384-85 (citing Cooper I, 154 F.3d at 1326), Goldfarb’s reduction to practice of the material that Cooper made and presented for patenting, at least raises a substantial question of “joint inventorship.” The statute is clear, and surely presents enough of a question that joint invention could be reasonably raised in defense:
Joint Inventors — ... Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.
35 U.S.C. § 116(a) (2012).
The panel majority rules that Gore’s joint invention defense fails because Gore cannot show “collaboration” between Cooper and Goldfarb as to every limitation in the claims. Joint invention does not require collaboration as to every limitation, as the statute makes clear. Moreover, when the PTO’s interference procedures are removed from the deferential review status they enjoyed in Cooper I and Cooper II, the correctness of these rulings can reasonably be challenged in the infringement context.
In all events, the question as it relates to willfulness is whether the defense of invalidity could reasonably be raised, not whether it eventually succeeded. The flaws in the Goldfarb patent and the way it was obtained provided sufficiently reasonable defenses to both validity and enforceability. On the entirety of the premises and applying the correct legal standards, the judgment of willful infringement cannot stand.
Y. Damages
Even when willful infringement is found, it does not follow that punitive damages must be imposed, or that the damages must be doubled. The public benefit of Gore’s product cannot be ignored. Punitive damages are intended to discourage bad behavior, not life-saving medical devices. This en banc court specifically *854 asked for review of the damages award as related to the willfulness determination. Such review gets short shrift from my colleagues, who simply ignore the en banc court’s admonition that the premises and consequences of “willful” action receive objective, nationally consistent, implementation.
“Precedent holds that a finding of willfulness authorizes, but does not require, enhanced damages.” Laitram Corp. v. NEC Corp., 115 F.3d 947, 955 (Fed.Cir.1997); Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1582 (Fed.Cir.1992) (refusal to enhance damages despite the jury’s verdict of willful infringement); Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 543 (Fed.Cir.1990) (same); Delta-X v. Baker Hughes Prod. Tools, Inc., 984 F.2d 410, 413 (Fed.Cir.1993) (considering whether the defendant made a substantial challenge to infringement).
Extensive precedent supports judicial refusal to enhance damages when the case is close and the equities counsel moderation, not punishment. The award of punitive damages depends on both the infringer’s degree of culpability, and the injury that the infringement imposed on the pat-entee. Bard was awarded full recovery for its loss of business to the Gore product. The district court stated that “the Court is satisfied that a fair and full amount of compensatory money damages, when combined with a progressive compulsory license, will adequately compensate Plaintiffs’ injuries, such that the harsh and extraordinary remedy of injunction — with its potentially devastating public health consequences — can be avoided.” Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., No. 03-CV-0597, 2009 WL 920300, at *5 (D.Ariz. Mar. 31, 2009).
The district court’s recognition of the public’s interest and medical benefits imparted by Gore’s product, and the court’s refusal to enjoin its provision, cannot be reconciled with the punitive doubling of damages. There was no showing, or even a charge, of intentional harm, as required for severe punishment as here meted out. See Restatement (Second) of Torts § 500 (1965).
Thus, regardless of whether willfulness was a supportable ruling, the doubling of the damages award is untenable. From my colleagues’ contrary ruling, I respectfully dissent.

. Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., No. 03-CV-0597-PHX-MHM, 2009 WL 920300, at *5 (D.Ariz. March 31, 2009).

. Counsel: Is your testimony there knowingly false or truthful?
Mr. Detton: No, that was inaccurate testimony.
Counsel: Was it knowingly false?
Mr. Detton: Yes, it was.
Counsel: Perjury?
Mr. Detton: Yes, it was.
Trans.1915:5-15, Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., No. 03-CV-0579-PHX-MHM, (D.Ariz. Nov. 27, 2007), ECF No. 787.